**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALVIN SIMS, SR.,**<br><br>*Plaintiff,*<br><br>v<br>.<br>**CITY OF CAMPBELL, OHIO;**<br>c/o Mayor, 351 Tenney Avenue<br>Campbell, Ohio 44405<br><br>**KEVIN SFARRA, Chief of Police,**<br>(Official Capacity);<br>351 Tenney Avenue<br>Campbell, Ohio 44405<br><br>**OFFICER RICHARD EVANS**<br>(Individual Capacity);<br>351 Tenney Avenue<br>Campbell, Ohio 44405<br><br>**SGT. TIMOTHY RAUSCHENBACH**<br>(Individual Capacity);<br>351 Tenney Avenue<br>Campbell, Ohio 44405<br><br>**OFFICER JACOB XENAKIS**<br>(Individual Capacity),<br>351 Tenney Avenue<br>Campbell, Ohio 44405<br><br>*Defendants.* | ( | Case No.<br><br>JUDGE<br><br>**COMPLAINT**<br>*Jury Trial Demanded* |

## PRELIMINARY STATEMENT

This action arises from a traffic stop that a court of competent jurisdiction has already adjudicated unconstitutional. On January 27, 2026, the Campbell Municipal Court granted Plaintiff Alvin Sims, Sr.'s motion to suppress, finding as a matter of fact that the arresting officer "could not have observed the license plate illumination violation within the city of Campbell or it's jurisdictional territory," that the only moment the alleged violation was observable was after Plaintiff had traveled into the City of Youngstown, and that "the video evidence contradicts the officer's testimony rendering the stop of the defendant unconstitutional." The stop was therefore not merely defective in its execution. It was void at its inception. Officer Richard Evans possessed neither reasonable articulable suspicion nor statutory authority to seize Plaintiff. He initiated no pursuit within the territorial limits of the City of Campbell, as Ohio Revised Code § 2935.03(D) requires. He conceded each of these facts under oath.

What followed compounded the violation. Plaintiff, a licensed concealed-carry permit holder who voluntarily disclosed that he was armed, produced his permit, provided his license, and remained seated and stationary throughout, was subjected to an escalating use of force over a burned-out license plate bulb. A supervising sergeant broke the driver's window of his vehicle, and officers dragged him through and atop shattered glass, wrenching his arms behind his back with force sufficient to tear the supraspinatus tendon of his right shoulder and inflame the rotator cuff of his left.

Plaintiff was then charged with obstructing official business, an offense that cannot as a matter of Ohio law be committed against unlawful police action, and with a firearms offense that the officers' own written narrative refutes. His weapon was seized. The written report generated by the

Campbell Police Department states that the firearm was returned to him that night. It was not. Its return required a court order entered four months later.

This case is not about a single officer's error in judgment. It is about a municipality that had been told, by this very court, in a prior ruling, that its officers were conducting stops beyond their jurisdiction and that its mutual aid agreement did not authorize them, and that did nothing. Officer Evans, when shown the statute defining the outer boundary of his arrest authority, testified that he did not know what it was. When he read it aloud and conceded that two of its three mandatory conditions were not satisfied, he maintained that his stop was lawful nonetheless. He described conducting stops outside his jurisdiction as an unremarkable feature of his work.

Plaintiff seeks compensatory damages, punitive damages against the individual Defendants, declaratory and injunctive relief, and attorney's fees and costs under 42 U.S.C. § 1988.

## I. JURISDICTION AND VENUE

1. This action arises under the Fourth, Second, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

2. This Court has supplemental jurisdiction over Plaintiff's Ohio common-law claims under 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy.

3. Venue is proper in the Northern District of Ohio, Eastern Division, under 28 U.S.C. § 1391(b), because all Defendants reside in this District and all events giving rise to Plaintiff's claims occurred in Mahoning County, Ohio.

4. This action is timely. Claims under 42 U.S.C. § 1983 in Ohio are governed by the two-year limitations period of Ohio Revised Code § 2305.10. The events giving rise to this action occurred on November 7, 2025.

## II. PARTIES

5. Plaintiff Alvin Sims, Sr. is a natural person and a citizen of the United States residing in Youngstown, Mahoning County, Ohio. At all relevant times he held a valid Ohio concealed handgun license.

6. Defendant City of Campbell, Ohio is an Ohio municipal corporation. It operates the Campbell Police Department and is responsible for the training, supervision, discipline, and policies of its officers. It is a "person" subject to suit under 42 U.S.C. § 1983.

7. Defendant Kevin Sfarra is the Chief of Police of the Campbell Police Department and is sued in his official capacity. At all relevant times he was the final policymaking authority for the Campbell Police Department with respect to the training, supervision, and discipline of its officers, and with respect to the investigation and review of officer uses of force.

8. Defendant Richard Evans was at all relevant times a patrol officer employed by the Campbell Police Department, acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

9. Defendant Timothy Rauschenbach was at all relevant times a sergeant employed by the Campbell Police Department, acting under color of state law and within the scope of his employment, and acting in a supervisory capacity at the scene. He is sued in his individual capacity.

10. Defendant Jacob Xenakis was at all relevant times a patrol officer employed by the Campbell Police Department, acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

11. At all times relevant to this Complaint, each individual Defendant acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Ohio and the City of Campbell.

## III. FACTUAL ALLEGATIONS

### A. The Stop

12. On November 7, 2025, at approximately 2:05 a.m., Defendant Evans was on patrol in a marked Campbell Police cruiser, stationary in a parking lot on the south side of McCartney Road (State Route 422) near its intersection with Jacobs Road, within the City of Campbell.

13. McCartney Road forms the boundary between the City of Campbell and the City of Youngstown. Lincoln Knolls Plaza, the Save-A-Lot parking lot, and Jacobs Road all lie within the City of Youngstown.

14. Plaintiff exited the Shell gas station on the south side of McCartney Road, approximately 75 to 100 yards west of Defendant Evans's position and traveled northbound across McCartney Road into the Save-A-Lot parking lot, then eastbound across that lot, then northbound onto Jacobs Road.

15. Defendant Evans did not activate his overhead lights when Plaintiff crossed McCartney Road. He did not activate them when Plaintiff entered the Save-A-Lot parking lot. He did not activate them when Plaintiff turned onto Jacobs Road.

16. Defendant Evans activated his overhead lights approximately thirty seconds after the alleged observation, at a point when Plaintiff was traveling northbound on Jacobs Road, well within the City of Youngstown.

17. Defendant Evans conducted the stop on Jacobs Road, in the City of Youngstown, Ohio.

18. The sole asserted basis for the stop was a non-illuminated rear license plate lamp — a minor equipment violation under Ohio law.

**B. The Municipal Court's Findings**

19. Plaintiff was charged in the Campbell Municipal Court, Case Nos. CRB 2500535 and TRD 2500811, with obstructing official business in violation of R.C. 2921.31(A), improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(E)(5), and a rear license plate illumination violation.

20. Plaintiff moved to suppress. An evidentiary hearing was held on January 16, 2026, before the Honorable Mark J. Kolmacic. Defendant Evans was the State's sole witness. The dash-camera video from his cruiser was received in evidence.

21. On January 27, 2026, the Campbell Municipal Court granted the motion to suppress, finding that Defendant Evans “could not have observed the license plate illumination violation within the city of Campbell or it's jurisdictional territory on the northbound lane of McCartney Rd.”

22. The court found that because Plaintiff's vehicle crossed McCartney Road at a diagonal northeasterly angle rather than perpendicular, the rear of the vehicle and consequently the license plate was “angled away from officer Evans view,” and that “the only time officer Evans would have been able to observe the violation was when the defendant was travelling directly away from him on Jacob's road in the city of Youngstown.”

23. The court concluded: "Consequently the video evidence contradicts the officers testimony rendering the stop of the defendant unconstitutional and all evidence derived from the illegal stop shall be suppressed."

24. On March 20, 2026, all charges against Plaintiff were dismissed. On the open record, the Campbell Municipal Court raised and then expressly withdrew any requirement of a probable-cause stipulation, stating: "And I'm going to need a stipulation of probable cause, as well. I'm not going to need a stipulation of probable cause."

25. The court then stated the basis for the dismissal: "The matter has been decided by way of motion to suppress, and I'm not going to force the defendant's hand in that matter." No plea was tendered, advised, or accepted. No stipulation of probable cause was made. No Crim.R. 11 colloquy occurred.

26. Notwithstanding the foregoing, the electronic docket entry dated March 20, 2026, in Case No. CRB 2500535 recites: "PURSUANT TO RULE 11 AGREEMENT CHARGE IS DISMISSED. DEF STIPULATES TO PROBABLE CAUSE." That recitation is false. It is contradicted by the court's own on-record statements of March 20, 2026, and is irreconcilable with the court's signed Judgment Entry of January 27, 2026. A defendant cannot stipulate to probable cause in a case dismissed precisely because the stop lacked any lawful basis at its inception.

27. Plaintiff moved twice in the Campbell Municipal Court to correct the false docket entry — by a Motion to Correct the Record (Emergency Relief Requested) filed April 1, 2026, and a Motion to Compel Correction of the Electronic Docket filed June 2, 2026. At no time in the underlying criminal proceeding did Plaintiff enter any plea, make any admission, or concede probable cause.

28. The criminal proceeding terminated in Plaintiff's favor in a manner affirmatively indicative of innocence: the charges were dismissed because the evidence supporting them was suppressed as the fruit of an unconstitutional seizure. The dismissal was not a compromise, a diversion, or a negotiated resolution.

**C. Defendant Evans's Sworn Admissions**

29. At the suppression hearing, Defendant Evans testified under oath and conceded that he possessed no authority to enforce traffic laws within Lincoln Knolls Plaza and no authority to enforce traffic laws on Jacobs Road, both of which lie within the City of Youngstown.

30. Defendant Evans conceded that he did not activate his lights when Plaintiff crossed McCartney Road, that observation does not constitute pursuit, and that his pursuit was not initiated until Plaintiff was within the jurisdiction of the City of Youngstown.

31. Defendant Evans conceded that there was no hot pursuit, that the alleged offense was not an arrestable offense, and that he had not been summoned into the City of Youngstown to render assistance.

32. When asked whether his training had addressed R.C. 2935.03(D), the statute governing the authority of a municipal police officer to pursue, arrest, and detain outside his jurisdiction, Defendant Evans testified that he did not know what that provision was.

33. Defendant Evans was then shown the statute and read subsection (D) aloud into the record. He conceded that the provision applied to him and to his position. He conceded that all three enumerated conditions must be satisfied. He conceded that the pursuit was not initiated within his jurisdiction. He conceded that the offense was neither a felony nor a misdemeanor of the first degree.

34. Immediately after making each of those concessions, Defendant Evans testified that he nonetheless believed the stop was lawful.

35. When asked at the suppression hearing whether a citizen would typically be upset at being stopped outside his jurisdiction, Defendant Evans testified: “No, it happens very rarely with me, no.” When counsel asked him to clarify what happened rarely, “That you do the traffic stuff outside the jurisdiction?” Defendant Evans answered: “That people are upset with me.”

36. Defendant Evans thus did not dispute that he conducts traffic stops outside the territorial jurisdiction of the City of Campbell. He identified as rare only the incidence of citizen objection, not the extraterritorial stops themselves, which he treated as an unremarkable and recurring feature of his patrol duties.

37. Defendant Evans described his training as instructing him that his “observations … have to be in the city of Campbell.” That is not the standard R.C. 2935.03(D) imposes. The statute requires that the *pursuit* be initiated within the jurisdiction, not merely that the observation occur there.

**D. The Escalation and Use of Force**

38. Upon approaching the vehicle, Defendant Evans requested Plaintiff's license and proof of insurance. Plaintiff verbally disputed the basis for the stop but remained seated in his vehicle, stationary, with his hands visible.

39. Plaintiff voluntarily disclosed that he was a licensed concealed handgun license holder and produced his permit before producing his driver's license. Defendant Evans acknowledged receipt of the permit on his body-worn camera and testified to that fact at the suppression hearing.

40. Defendants Rauschenbach and Xenakis subsequently arrived at a traffic stop already in progress.

41. Defendant Rauschenbach asked Defendant Evans why he had conducted the stop. Defendant Evans stated that Plaintiff's rear license plate light was not illuminated. After a pause, Defendant Evans added a second justification "obstructed view," that appears nowhere else in this record. It does not appear in the citation issued to Plaintiff. It does not appear in the written incident report. And Defendant Evans never repeated it under oath: at the suppression hearing he testified that the sole basis for the stop was the non-illuminated rear license plate lamp.

42. The "obstructed view" justification was thus manufactured at the scene, offered to a supervising officer to justify a stop already under question, and then abandoned, never charged, never documented, never sworn to.

43. Defendant Rauschenbach thus had actual, contemporaneous notice at the scene that the stated basis for the seizure was uncertain, shifting, and unverified. He nonetheless escalated the encounter.

44. Defendant Rauschenbach ordered Plaintiff to exit the vehicle. Plaintiff stated that he was not required to exit and declined. Defendant Rauschenbach repeated the order several times. Plaintiff continued to decline and advised that his doors were locked.

45. At no point did Plaintiff threaten any officer, reach for any weapon, attempt to flee, or make any movement that could reasonably be perceived as a threat. He remained seated in the driver's seat of a stationary vehicle. The firearm he had disclosed remained where he had disclosed it to be.

46. Defendant Rauschenbach announced that Plaintiff was under arrest for obstructing official business and stated that the window would be broken to remove him from the vehicle.

47. Defendant Rauschenbach then broke the driver's side window of Plaintiff's occupied vehicle.

48. Defendants Evans, Rauschenbach, and Xenakis forcibly removed Plaintiff from the vehicle through the shattered window opening, dragging him out by his arms, twisting his arms behind his back, and taking him to the ground through and atop broken glass.

49. Defendant Xenakis was present throughout, observed the escalation, the announcement, the breaking of the window, and the extraction, and had a realistic opportunity to intervene. He did not.

50. The entire encounter, from the initiation of the stop to its conclusion, spanned approximately fourteen minutes.

**E. Plaintiff's Injuries**

51. As a direct and proximate result of the force applied by Defendants, Plaintiff sustained injuries to both shoulders.

52. Magnetic resonance imaging of Plaintiff's right shoulder performed on May 13, 2026, revealed a partial tear of the supraspinatus tendon, superior labral fraying and/or tear, and glenohumeral and acromioclavicular joint changes.

53. Magnetic resonance imaging of Plaintiff's left shoulder performed the same day revealed subscapularis tendinitis with trace osseous edema at the insertion and mild enthesopathy, supraspinatus and anterior infraspinatus tendinitis, and long head biceps tendinitis with mild tenosynovitis.

54. The clinical history recorded contemporaneously in Plaintiff's left shoulder imaging report states that his shoulder pain and decreased range of motion date "since 11/7/25 when he was drug out of car by his arms and twisted up behind his back."

55. Plaintiff has suffered and continues to suffer pain, decreased range of motion, functional limitation, and impairment of the use of both shoulders, and has incurred and will continue to incur medical expenses. To the extent any degenerative condition preexisted November 7, 2025, the force applied by Defendants aggravated that condition and converted it from asymptomatic to symptomatic and disabling.

56. Plaintiff further suffered the loss of liberty attendant to arrest and detention, humiliation, emotional distress, property damage to his vehicle, towing and impound costs, bond costs, attorney's fees incurred in defending the criminal charges, and lost wages.

**F. The Charges and the Written Report**

57. Plaintiff was charged with obstructing official business under R.C. 2921.31(A). Under Ohio law, a conviction for obstructing official business requires that the officer have been engaged in the lawful performance of his duties. A person cannot obstruct that which an officer has no lawful authority to do.

58. Plaintiff was charged with improperly handling firearms in a motor vehicle under R.C. 2923.16(E)(5), a provision prohibiting a licensee from knowingly removing, attempting to remove, or making contact with a loaded handgun while a law enforcement officer approaches.

59. The Campbell Police Department's own written narrative refutes that charge. It states that the firearm was located between the driver's seat and the center console during an inventory of the vehicle conducted after Plaintiff had already been removed, handcuffed, and placed in

the rear of a marked cruiser. Plaintiff never touched, reached for, or made contact with the weapon at any point during the encounter.

60. The written incident report prepared by the Campbell Police Department contains material misstatements of fact.

61. First, the report states that Defendant Evans activated his overhead lights and siren at the time Plaintiff turned onto Jacobs Road. Defendant Evans's sworn testimony, and the dash-camera video, establish that he did not activate his lights until approximately thirty seconds later, after Plaintiff was well within the City of Youngstown. The timing misstated in the report is the precise fact on which the lawfulness of the stop turns.

62. Second, the report charges a firearms offense predicated on conduct the report's own narrative affirmatively contradicts.

63. Third, the report states that Plaintiff's handgun "was returned to him" upon his release from custody on November 7, 2025. That statement is false. The firearm was retained by the Campbell Police Department and was not returned until the Campbell Municipal Court ordered its return on March 20, 2026, more than four months later.

64. Fourth, the report describes the use of force in the passive voice, "[t]he window was broken out and Sims was physically removed from the vehicle," identifying no actor, omitting any mention of Plaintiff being taken to the ground, omitting any mention of broken glass, and recording no injury.

**G. The City's Notice and Its Failure to Act**

65. At the suppression hearing, when Defendant Evans invoked a mutual aid agreement with the City of Youngstown as authority for the extraterritorial stop, the Campbell Municipal Court

stated that such testimony had "come up before" and that the court did not believe the mutual aid agreement was "applicable in a situation such as this."

66. The Campbell Municipal Court then directly asked the City's Law Director, who was personally prosecuting the matter and is the City's chief legal officer: "You saw my decision in the Cole case, right?" The Law Director answered, on the open record: "Yes, Your Honor."

67. That exchange establishes, from the mouth of the City's own chief legal officer, contemporaneous institutional awareness at the highest municipal policymaking level that the Campbell Municipal Court had previously adjudicated the same species of jurisdictional overreach in the *Cole* matter, and that the mutual aid agreement did not authorize it.

68. Notwithstanding that notice, the City of Campbell did not train its officers on the requirements of R.C. 2935.03(D). Defendant Evans, when asked, did not know what the provision was.

69. Notwithstanding that notice, the City of Campbell trained its officers that jurisdiction is determined by the location of the officer's *observation* rather than by the location at which *pursuit is initiated*. That instruction is contrary to the plain text of the statute and is the precise error that produced the seizure of Plaintiff.

70. No use-of-force report, supervisory review, internal affairs investigation, or disciplinary proceeding concerning the events of November 7, 2025, was produced in discovery in the underlying criminal matter despite request. Upon information and belief, no such review was ever conducted.

71. Defendant Sfarra, as the final policymaking authority for the Campbell Police Department, took no action to investigate, review, correct, or discipline the conduct of Defendants Evans, Rauschenbach, or Xenakis. The City thereby ratified that conduct.

72. The conduct of the individual Defendants was consistent with, and the product of, the training, customs, and practices of the City of Campbell. Defendant Evans testified that his actions were consistent with his training.

## IV. CAUSES OF ACTION

### COUNT I

***Unreasonable Seizure and Unlawful Traffic Stop***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendant Evans)*

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. The Fourth Amendment prohibits unreasonable seizures. A traffic stop is a seizure that must be supported by reasonable articulable suspicion that a traffic violation has occurred.

75. Defendant Evans lacked reasonable articulable suspicion to stop Plaintiff. A court of competent jurisdiction has found as a matter of fact that Defendant Evans could not have observed the alleged violation from his position within the City of Campbell, and that the video evidence contradicts his testimony that he did.

76. Defendant Evans additionally lacked statutory authority to seize Plaintiff. Under R.C. 2935.03(D), a municipal police officer may pursue, arrest, and detain outside his territorial jurisdiction only if all three enumerated conditions are satisfied. Defendant Evans conceded under oath that the pursuit was not initiated within his jurisdiction and that the offense was neither a felony nor a misdemeanor of the first degree.

77. An officer who acts wholly outside the territorial limits of his statutory authority acts as a private citizen and not as a peace officer and is clothed with no greater authority than any other member of the public to compel a motorist to stop.

78. The right to be free from a traffic stop unsupported by reasonable suspicion was clearly established on November 7, 2025. No reasonable officer could have believed the seizure of Plaintiff was lawful. Qualified immunity is unavailable.

79. As a direct and proximate result, Plaintiff suffered the injuries and damages described above.

## COUNT II

***Unlawful Expansion and Prolongation of the Stop***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Evans, Rauschenbach, and Xenakis)*

80. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

81. A traffic stop must be limited in scope and duration to the mission that justified it. Authority for the seizure ends when the tasks tied to the traffic infraction are, or reasonably should have been, completed.

82. Plaintiff produced his concealed handgun license and his driver's license and confirmed his insurance status. Nothing in the encounter generated independent reasonable suspicion of criminal activity.

83. Defendants nonetheless prolonged and expanded the encounter into an arrest, a forcible extraction, a search of the vehicle, and the seizure of Plaintiff's property, without lawful justification.

84. Because the stop was void at its inception, no lawful mission existed to be prolonged, and every act taken in the course of it was itself unlawful.

## COUNT III

***False Arrest and Unlawful Detention***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Evans, Rauschenbach, and Xenakis)*

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. Defendants arrested and detained Plaintiff without probable cause and without lawful authority.

87. The sole offense for which Plaintiff was placed under arrest at the scene was obstructing official business under R.C. 2921.31(A). An essential element of that offense is that the public official have been engaged in the lawful performance of his duties.

88. Defendants were not engaged in the lawful performance of their duties. The stop was unconstitutional and outside the officers' statutory authority. Plaintiff therefore could not, as a matter of law, have obstructed it.

89. Plaintiff's verbal disagreement with the basis for the stop, and his refusal to exit a vehicle he was under no lawful obligation to exit, cannot supply probable cause for arrest.

90. Plaintiff was handcuffed, transported to the Campbell Police Department, required to post bond, and deprived of his liberty without lawful cause.

## COUNT IV

***Excessive Force***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Rauschenbach and Evans)*

91. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

92. The Fourth Amendment prohibits force that is objectively unreasonable under the totality of the circumstances, judged by the severity of the offense, whether the subject posed an immediate threat, and whether he was actively resisting or attempting to flee.

93. The offense at issue was a burned-out license plate lamp, a minor equipment violation for which no custodial arrest was authorized, arising from a stop that was itself unconstitutional.

94. Plaintiff posed no immediate threat. He was seated in a stationary vehicle with his hands visible. He had voluntarily disclosed that he was armed and produced his concealed handgun license and made no movement toward the weapon at any time.

95. Plaintiff was not attempting to flee. His vehicle was stopped and he remained in the driver's seat throughout.

96. Defendant Rauschenbach broke the driver's side window of Plaintiff's occupied vehicle. Defendants then dragged Plaintiff through the shattered window opening by his arms, twisted his arms behind his back, and took him to the ground through and atop broken glass.

97. That force was objectively unreasonable and grossly disproportionate to any legitimate law enforcement objective. The announcement of an intention to break the window does not render the force lawful; it establishes that the decision was deliberate rather than reflexive.

98. The force applied tore the supraspinatus tendon of Plaintiff's right shoulder and caused tendinitis and inflammation throughout the rotator cuff of his left shoulder.

## COUNT V

***Failure to Intervene***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Xenakis and Evans)*

99. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

100. A law enforcement officer who observes a constitutional violation by a fellow officer, and who has both the opportunity and the means to prevent it, has an affirmative duty to intervene.

101. Defendant Xenakis was present throughout the encounter. He observed the escalation, heard the announcement that the window would be broken, observed the window being broken, and observed the forcible extraction of Plaintiff. He had a realistic opportunity to intervene and did not.

102. Defendant Evans, who knew that he had initiated the stop outside his jurisdiction and without having observed a violation within it, likewise had an opportunity to prevent the escalation and the use of force and did not.

**COUNT VI**

***Unlawful Seizure of Property***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Evans and Rauschenbach)*

103. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

104. Defendants seized Plaintiff's firearm from his vehicle during an inventory search conducted incident to an unlawful arrest following an unconstitutional stop.

105. Defendants also caused Plaintiff's vehicle to be towed and impounded.

106. Because the underlying stop and arrest were unlawful, the inventory search and the resulting seizure were themselves unlawful.

107. The Campbell Police Department retained Plaintiff's firearm notwithstanding the written representation in its incident report that the weapon had been returned to him on the night of his arrest. The firearm was not returned until the Campbell Municipal Court ordered its return on March 20, 2026.

108. Plaintiff was deprived of his property for more than four months without lawful basis.

## COUNT VII

***Deprivation of Second Amendment Rights***
***42 U.S.C. § 1983 and Second and Fourteenth Amendments***
*(Against Defendants Evans and Rauschenbach)*

109. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

110. At all relevant times Plaintiff held a valid Ohio concealed handgun license and was lawfully transporting a firearm in his vehicle.

111. Plaintiff complied with Ohio law by voluntarily and promptly disclosing to Defendant Evans that he was a licensee and that he was armed, and by producing his license.

112. Plaintiff's lawful exercise of his right to keep and bear arms, and his compliance with the disclosure obligations attendant to that right, were treated by Defendants as grounds for escalation rather than as evidence of law-abiding conduct.

113. Defendants charged Plaintiff under R.C. 2923.16(E)(5) with conduct their own written narrative establishes did not occur, seized his firearm, and retained it for more than four months. Defendants thereby burdened and deprived Plaintiff of rights secured by the Second Amendment.

## COUNT VIII

***Malicious Prosecution***
***42 U.S.C. § 1983 and Fourth and Fourteenth Amendments***
*(Against Defendants Evans and Rauschenbach)*

114. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

115. Defendants participated in and influenced the decision to initiate criminal proceedings against Plaintiff for obstructing official business and improperly handling firearms in a motor vehicle.

116. There was no probable cause for either charge. The obstruction charge fails as a matter of law because Defendants were not engaged in the lawful performance of their duties. The firearms charge is affirmatively refuted by the Defendants' own written narrative, which places the weapon between the seat and console, discovered during an inventory search conducted after Plaintiff was handcuffed and secured in a cruiser.

117. Malice may be inferred from the absence of probable cause and from Defendants' conduct. Defendant Evans manufactured an uncharged "obstructed view" justification at the scene to satisfy a supervisor's inquiry, then abandoned it, it appears in no citation, no report, and no sworn testimony. That invention and abandonment of a pretextual basis, together with the preparation of a written report containing material falsehoods, evidences malice and bad faith.

118. Plaintiff suffered a deprivation of liberty apart from the initial seizure, including arrest, detention, the posting of bond, and the burdens of defending criminal charges over more than four months.

119. The criminal proceedings terminated in Plaintiff's favor. All charges were dismissed on March 20, 2026, following the suppression of all evidence, without any plea, stipulation, or negotiated resolution. The dismissal was affirmatively indicative of innocence.

## COUNT IX

***Municipal Liability and Failure to Train***
***42 U.S.C. § 1983 and Monell v. Department of Social Services***
*(Against Defendant City of Campbell and Defendant Sfarra, Official Capacity)*

120. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

121. The City of Campbell was deliberately indifferent to the constitutional rights of persons within the jurisdictions bordering its territorial limits by failing to train its officers on the statutory boundaries of their arrest authority.

122. The City's training on jurisdiction was not merely absent, it was affirmatively erroneous. The City did not omit the subject of territorial authority; it taught its officers a rule that is wrong. Defendant Evans testified that his training instructed him that his authority turns on where his *observation* occurs. R.C. 2935.03(D) requires instead that the *pursuit be initiated* within the officer's jurisdiction. A municipality that affirmatively instructs its officers in an incorrect legal standard is more culpable than one that simply fails to address the subject.

123. The unconstitutional consequence of this affirmative mis-instruction was the plainly obvious result of teaching officers that observation, rather than the initiation of pursuit, defines the limits of their authority. An officer trained in that erroneous rule will inevitably seize persons beyond his jurisdiction, precisely as Defendant Evans seized Plaintiff.

124. Even absent a pattern of prior violations, the need to train officers on the territorial limits of their arrest authority is so obvious, and the consequence of failing to do so or of training the wrong rule so likely to result in constitutional violations, that the City's deliberate indifference may be inferred from the single-incident circumstances alone. The City of Campbell borders the City of Youngstown along McCartney Road, and its officers routinely encounter that boundary in the ordinary course of patrol.

125. Defendant Evans testified that he was unaware of R.C. 2935.03(D) and did not know what the provision addressed. That an officer with formal peace-officer certification did not know the statute defining the outer limit of his arrest authority is direct evidence of the City's failure to train on that authority.

126. The City had actual notice of the deficiency. The Campbell Municipal Court had previously ruled, in the *Cole* matter, that the mutual aid agreement did not authorize extraterritorial stops of this kind, and its Law Director confirmed on the record that she was aware of that decision.

127. Despite that notice, the City took no corrective action, it neither retrained its officers on R.C. 2935.03(D) nor corrected the erroneous observation-based rule it had taught them. The City's affirmative mis-training and its failure to correct it were the moving force behind the unconstitutional seizure of Plaintiff. Had Defendant Evans been trained that pursuit, not observation, must be initiated within his jurisdiction, he would not have seized Plaintiff in the City of Youngstown.

## COUNT X

**Municipal Liability and Unconstitutional Custom or Practice**
**42 U.S.C. § 1983 and Monell v. Department of Social Services**
(Against Defendant City of Campbell and Defendant Sfarra, Official Capacity)

128. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

129. The City of Campbell maintained a custom and practice of conducting traffic stops beyond the territorial limits of its jurisdiction, in violation of R.C. 2935.03(D) and the Fourth Amendment.

130. Defendant Evans, testifying under oath, identified as rare only the incidence of citizen objection to his extraterritorial stops, not the stops themselves, treating policing beyond Campbell's territorial limits as a standard and recurring feature of his duties rather than an aberration.

131. The Campbell Municipal Court's observation that such testimony had "come up before," together with its prior ruling in the *Cole* matter, establishes that Plaintiff's stop was not an isolated event.

132. The practice was so persistent and widespread as to constitute a custom having the force of law, of which the City's policymakers had actual or constructive knowledge and to which they were deliberately indifferent.

## COUNT XI

***Municipal Liability and Ratification and Failure to Investigate***
***42 U.S.C. § 1983 and Monell v. Department of Social Services***
*(Against Defendant City of Campbell and Defendant Sfarra, Official Capacity)*

133. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

134. Defendant Sfarra is the final policymaking authority for the Campbell Police Department with respect to the investigation, review, and discipline of officer conduct and uses of force.

135. A supervising sergeant broke the window of an occupied civilian vehicle and participated in the forcible extraction of a compliant, seated motorist during a stop for a minor equipment violation, resulting in injury.

136. No use-of-force report, supervisory review, internal affairs investigation, or disciplinary proceeding was produced in discovery in the underlying criminal matter despite request. Upon information and belief, none was ever conducted.

137. The sole document the City generated regarding the incident, the written incident report, misstates the timing of the activation of emergency lights, charges an offense the report's own narrative refutes, falsely represents that Plaintiff's firearm was returned to him, and describes the use of force in the passive voice without identifying any actor, mentioning broken glass, or recording any injury.

138. By failing to review, investigate, correct, or discipline the conduct of its officers, and by accepting without scrutiny a report containing material falsehoods, the City and Defendant Sfarra ratified and approved that conduct and adopted it as the policy of the City of Campbell.

## COUNT XII

***Assault and Battery***
***Ohio Common Law***
*(Against Defendants Rauschenbach, Evans, and Xenakis)*

139. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140. Defendants intentionally caused Plaintiff to apprehend imminent harmful and offensive contact and intentionally made harmful and offensive contact with Plaintiff's person, without his consent and without legal justification or privilege.

141. Because the stop and arrest were unlawful, Defendants had no privilege to use any force upon Plaintiff.

142. Defendants acted with malicious purpose, in bad faith, and in a wanton and reckless manner, and are therefore not immune under R.C. 2744.03(A)(6).

## COUNT XIII

***False Imprisonment / Ohio Common Law***
*(Against Defendants Evans, Rauschenbach, and Xenakis)*

143. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Defendants intentionally confined Plaintiff within fixed boundaries, Plaintiff was conscious of the confinement, and the confinement was without lawful privilege and against Plaintiff's consent.

145. Defendants acted with malicious purpose, in bad faith, and in a wanton and reckless manner, and are therefore not immune under R.C. 2744.03(A)(6).

## COUNT XIV

***Intentional Infliction of Emotional Distress / Ohio Common Law***
*(Against Defendants Rauschenbach, Evans, and Xenakis)*

146. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

147. Defendants' conduct, breaking the window of an occupied vehicle and dragging a licensed, compliant, seated motorist through broken glass during a stop for a burned-out license plate bulb that they had no lawful authority to conduct. was extreme and outrageous, exceeding all bounds tolerated by a civilized community.

148. Defendants intended to cause or knew or should have known their conduct would cause, serious emotional distress, and Plaintiff suffered serious emotional distress as a proximate result.

## COUNT XV

***Malicious Prosecution / Ohio Common Law***
*(Against Defendants Evans and Rauschenbach)*

149. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

150. Defendants instituted or continued criminal proceedings against Plaintiff maliciously and without probable cause. The proceedings terminated in Plaintiff's favor by dismissal on March 20, 2026.

151. Defendants acted with malicious purpose, in bad faith, and in a wanton and reckless manner, and are therefore not immune under R.C. 2744.03(A)(6).

## COUNT XVI

***Conversion / Ohio Common Law***
*(Against Defendants Evans and Rauschenbach)*

152. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

153. Defendants exercised dominion and control over Plaintiff's firearm, wrongfully and in denial of and inconsistent with Plaintiff's rights of ownership and retained the property for more than four months after representing in writing that it had been returned.

## COUNT XVII

***Punitive Damages***
***42 U.S.C. § 1983 and Ohio Common Law***
*(Against Defendants Evans, Rauschenbach, and Xenakis, Individually)*

154. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

155. Punitive damages are available under § 1983 against individual defendants whose conduct is motivated by evil motive or intent or involves reckless or callous indifference to the federally protected rights of others.

156. Defendant Evans read R.C. 2935.03(D) aloud under oath, conceded that it governed his authority, conceded that two of its three mandatory conditions were not satisfied, and then testified that he believed his stop was lawful notwithstanding. That is not error; it is a demonstrated indifference to the legal limits on his power.

157. Defendant Rauschenbach was placed on contemporaneous notice at the scene that the stated basis for the stop was shifting and unverified, and responded by escalating to the destruction of property and the forcible extraction of a compliant motorist.

158. Defendant Xenakis observed the entire escalation and did nothing.

159. The individual Defendants' conduct evinces reckless and callous indifference to Plaintiff's clearly established constitutional rights and warrants an award of punitive damages sufficient to deter its repetition.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alvin Sims, Sr. respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

a. Compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial and in excess of the jurisdictional minimum of this Court, including damages for past and future medical expenses, physical pain and permanent impairment, loss of liberty, emotional distress, property damage, and economic loss;

b. Punitive damages against Defendants Evans, Rauschenbach, and Xenakis in their individual capacities in an amount sufficient to punish and deter;

c. A declaration that the seizure of Plaintiff on November 7, 2025, violated the Fourth and Fourteenth Amendments, and that the policies, customs, and training practices of the City of Campbell described herein are unconstitutional;

d. Injunctive relief requiring the City of Campbell to adopt and enforce a written policy governing the territorial limits of officer authority under R.C. 2935.03; to provide mandatory training to all sworn personnel on R.C. 2935.03(D) and the constitutional limits of traffic stops; to provide mandatory training on lawful interactions with concealed handgun licensees; to adopt and enforce a written use-of-force reporting, review, and investigation policy; and to submit to independent monitoring of compliance for twenty-four months;

e. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988;

f. Pre- and post-judgment interest as permitted by law; and

g. Such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff Alvin Sims, Sr. hereby demands a trial by jury on all claims so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

______________________________

Karrie D. Howard, Esq. (0082858)
**HOWARD LEGAL SERVICES LLC**
1414 S. Green Rd., Ste. 203 PMB 16
South Euclid, Ohio 44121
(330) 774-9198
khoward@howardlegalservices.com

*Counsel for Plaintiff Alvin Sims, Sr.*